**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 20 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

JORDAN F. MILLER
CORPORATION, a California
corporation; JORDAN F. MILLER, an
individual,

        Plaintiffs-Appellants,

and

AMERICAN EAGLE INSURANCE
COMPANY, a foreign corporation,

        Plaintiff,

v.

MID-CONTINENT AIRCRAFT
SERVICE, INC., an Oklahoma
corporation; JET CENTER TULSA,
INC., an Oklahoma corporation,

        Defendants-Third Party-
        Plaintiffs-Appellees,

v.

E.U. BAIN, Jr.,

        Third-Party-Defendant-
        Third-Party-Plaintiff,

v.

VICTOR MILLER,

        Third-Party-Defendant.

No. 97-5089
(D.C. No. 95-CV-469)
(N.D. Okla.)

# ORDER AND JUDGMENT[*]

Before **BRORBY**, **BARRETT**, and **BRISCOE**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument.  See Fed. R. App. P. 34(f); 10th Cir. R. 34.1.9.  The case is therefore ordered submitted without oral argument.

Plaintiffs Jordan F. Miller and Jordan F. Miller Corp. (collectively, "Miller"), filed this interlocutory appeal of the district court's order dismissing certain of their claims due to the spoliation of crucial evidence.  The court, acting under its inherent power, concluded that the loss or destruction of the evidence so prejudiced defendants that no lesser sanction would insure that they received a fair trial.  We exercise jurisdiction under 28 U.S.C. § 1292(b), and affirm.

---

[*]     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

## I. Factual Background

Miller's claims arise out of his purchase of a Cessna twin-engine airplane from defendants Mid-Continent Aircraft Service and Jet Center Tulsa, Inc. (collectively, "MCAS"). Miller took delivery of the airplane in Oklahoma on December 17, 1993, and flew it to San Diego, California. When Miller landed in San Diego, sometime after midnight on December 18, the left landing gear collapsed, causing major damage to the airplane, but no personal injuries to Miller or his passengers. An FAA investigator inspected the airplane shortly after the crash and reported that "[i]mmediately after touchdown, the left main landing gear collapsed. . . . It appears that the landing gear failed due to a fatigue crack in the trunion area. Further examination will be conducted when the damaged components are removed." Appellants' App. at 36. Miller subsequently notified his insurance carrier, American Eagle Insurance Co., of the incident and made a claim against his policy. American Eagle retained the firm of Arnold & Arnold to inspect the aircraft and adjust Miller's claim.

In January 1994, Ken Harris of Arnold & Arnold solicited bids from several airplane repair businesses, which he forwarded to American Eagle and to Miller. Both American Eagle and Miller approved the bid submitted by Southern Cal Aircraft Repair (SCAR), which was then hired to make necessary repairs to Miller's airplane. Ken Harris monitored the repairs and made reports to American

Eagle, which were forwarded to Miller. Based on Harris' recommendations, American Eagle made payments under Miller's policy for repairs totaling approximately $55,000. During the course of repairing the damage caused by the crash, SCAR discovered various other defects in the plane, which it reported to Miller.

In May 1995, Miller filed suit against MACS, alleging breach of contract, breach of warranty, negligence, and products liability, based on the collapse of the left landing gear and various other alleged defects in the plane. Miller sought damages in excess of $275,000 or, in the alternative, rescission of the purchase contract. MACS was served with the complaint in August 1995, and in September, MACS made its first request of Miller to inspect the landing gear that had allegedly failed. Following a case management conference on January 11, 1996, at which American Eagle moved to intervene as a party-plaintiff in the action, MACS sent a letter to both American Eagle's attorney and Miller's attorney requesting that "the actual landing gear, component parts thereof or other apparatus which you claim as relevant to your claims be produced for inspection and possible testing by our experts." Id. at 43.

American Eagle entered the lawsuit on February 22, and on February 28, MACS submitted a request for production of documents to American Eagle that included a request for "[a]ny and all aircraft component parts taken into

possession by American Eagle Insurance Company . . . for the purpose of allowing defendants and/or defendants' experts, the opportunity to inspect and test the component parts." Id. at 46. American Eagle responded to MACS' request in late March by saying that it would make aircraft components in its possession available for inspection at a mutually agreeable time. In May 1996, Miller's attorney wrote MACS and informed it that

> [t]he components and parts which were removed from the aircraft in the process of repairing it and making it airworthy are in the possession of various repair facilities which have worked on the aircraft or are currently working on it. At my request, a list of all such parts and components is being made. Once this has been done, it is my understanding that the parties will confer and agree to inspection and non-destructive testing of those parts and components.

Id. at 51. In July 1996, the parties' attorneys corresponded about traveling to California to inspect the parts, take depositions, and arrange to have the parts shipped back to Oklahoma, where MACS' experts would be able to test them.

In mid-August, the attorneys went to California, where they deposed Ted Hazelwood, the President of SCAR. During the deposition, counsel learned for the first time that all but one of the component parts of the left landing gear had been lost or destroyed. Hazelwood testified that the only part of the damaged landing gear that remained was the upper main link. He said that he kept the other parts for awhile, but he did not know what had happened to them. Hazelwood explained: "I didn't know about all this litigation, so I don't like

keeping old parts from damaged airplanes. I throw them out, because the FAA is on this bogus parts deal, so I don't keep them around. And I'm thinking they got thrown out. That's my guess." Id. at 154.[1]

## II. Procedural Background

In December 1996, MACS filed a motion seeking to dismiss plaintiffs' damage claims relating to the left landing gear, based on the spoliation of evidence.[2] MACS argued that Miller and American Eagle had a duty to preserve the landing gear, which they knew would be relevant in the litigation, and that the failure of their agent, SCAR, to preserve the evidence so prejudiced MACS' ability to defend against plaintiffs' claims as to make trial thereon fundamentally unfair. Miller and American Eagle filed a joint reply to MACS' motion, authored

---

[1]     Hazelwood later filed an affidavit with the court in which he stated that "at some time after the aircraft arrived at Southern Cal Aircraft, the exact date being unknown, [he] was informed by the aircraft's owner, Mr. Jordan Miller, and by Mr. Miller's attorney, Mr. Richard B. O'Connor, that all parts removed from the aircraft were to be preserved as evidence in a possible law suit." Appellants' App. at 196. To the extent that Hazelwood's affidavit contradicted his earlier deposition testimony, the district court viewed the deposition testimony as the more reliable. See id. at 187 n.6 (citing, inter alia, Franks v. Nimmo, 796 F.2d 1230, 1237 (10th Cir. 1986)). Miller does not challenge this evidentiary ruling on appeal.

[2]     MACS also sought sanctions under Rules 26 and 37 of the Federal Rules of Civil Procedure, based on plaintiffs' failure to comply with discovery requests relating to evidence other than the landing gear component parts. The parties eventually resolved most of these discovery disputes, and the district court's order did not address these matters. Nor do we.

by counsel for American Eagle, in which they acknowledged the court's inherent power to impose a sanction for the spoliation of evidence, but argued that no sanction should be imposed. Plaintiffs contended that they had no hand in the loss or destruction of the evidence and, more importantly, that they suffered as much prejudice as MACS, if not more, because their own experts had not had an opportunity to inspect or test the landing gear components. The district court conducted a hearing on the motion, after which it ordered the parties to submit additional evidence, consisting of affidavits from their respective experts "concerning whether or not actual physical examination and testing of the missing left landing gear components is critical to or reasonably necessary for a determination of the cause of the landing gear failure on December 18, 1993." Id. at 192.

Thereafter, the court entered an order dismissing plaintiffs' claims for damages arising from the collapse of the left landing gear. The court concluded that the "pivotal question" before it was "how critical in a due process-fair trial analysis is it for Defendants and their expert to have the right to visually inspect and appropriately test pertinent components of the aircraft left landing gear." Id. at 188. Based on the evidence before it, the court concluded that "hands-on inspection and testing is critical to a fair trial and due process for the Defendants." Id. at 189. The court then considered and rejected plaintiffs'

argument that only an intentional destruction of evidence warrants a sanction, noting numerous cases where sanctions were imposed even when the destruction or loss of evidence was neither intentional nor in bad faith. Finally, the court considered what type of sanction would remedy the prejudice to MACS, and concluded that only a dismissal of plaintiffs' claims relating to the missing landing gear would suffice.

Miller subsequently filed a motion to amend the court's order, in which he asked the court to add language to the order that would permit him to take an interlocutory appeal under 28 U.S.C. § 1292(b). In the alternative, Miller asked that the court "reconsider Mr. Miller's responsibility for the disappearance of the landing gear." Appellants' App. at 171. The court granted Miller's request to amend the order to permit him to pursue an interlocutory appeal, but denied Miller's request to reconsider the dismissal.

We granted Miller permission to appeal under § 1292(b), and this appeal followed. Miller's primary contentions on appeal are that the district court should not have sanctioned him for the loss or destruction of the landing gear because (1) only American Eagle, and not Miller, had the duty to preserve the evidence and, therefore, only American Eagle was responsible for its loss or destruction; and (2) Miller was as prejudiced by the spoliation of the evidence as was MACS.

### III.  Analysis

Federal courts possess inherent powers necessary "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991) (quotation omitted).  Among those inherent powers is "the ability to fashion an appropriate sanction." Id. at 44; see also  Smith v. Northwest Fin. Acceptance, Inc., 129 F.3d 1408, 1419 (10th Cir. 1997) ("[A] federal court possesses the authority to impose . . . sanctions on its inherent power to control and supervise its own proceedings.") (quotations omitted) (alteration in original).  "'We review a court's imposition of sanctions under its inherent power for abuse of discretion.'" Martinez v. Roscoe, 100 F.3d 121, 123 (10th Cir. 1996) (quoting Chambers, 501 U.S. at 55).  "[T]he issue is not what we might have done if the situation had been presented to us originally, but rather, whether the district court abused its discretion in imposing the sanction." Dillon v. Nissan Motor Co., 986 F.2d 263, 267 (8th Cir. 1993).

We have not previously had occasion to consider when sanctions may be appropriate to redress the spoliation of evidence, as a general matter.  In Aramburu v. Boeing Co., 112 F.3d 1398 (10th Cir. 1997), we considered "the evidentiary doctrine of spoliation," and stated, as a general rule, that the "bad faith destruction of a document relevant to proof of an issue at trial gives rise to an inference that production of the document would have been unfavorable to the

party responsible for its destruction." Id. at 1407 (citing Coates v. Johnson & Johnson, 756 F.2d 524, 551 (7th Cir. 1985)). We also stated that, because only the bad faith loss or destruction of a document will "support an inference of consciousness of a weak case," no adverse inference should arise from spoliation that is merely negligent. Id. (citing Vick v. Texas Employment Comm'n, 514 F.2d 734, 737 (5th Cir. 1975)). But see Turner v. Hudson Transit Lines, Inc., 142 F.R.D. 68, 75 (S.D.N.Y. 1991) (concluding that, to restore the evidentiary balance, an adverse inference should arise even when the spoliation was merely negligent, because the prejudice to the other party is the same, regardless of the despoiler's intent).

Courts have not generally imposed a similar requirement of bad faith when considering other sanctions for the spoliation of evidence, however. See, e.g., Allstate Ins. Co. v. Sunbeam Corp., 53 F.3d 804, 806-07 (7th Cir. 1995) (upholding dismissal of claims as sanction for spoliation, even in absence of bad faith on part of despoiler); Dillon, 986 F.2d at 267-69 (upholding exclusion of evidence as sanction for spoliation, even in absence of bad faith on part of despoiler); Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp., 982 F.2d 363, 368-69 (9th Cir. 1992) (same).

When deciding whether to sanction a party for the spoliation of evidence, courts have considered a variety of factors, two of which generally carry the most

weight: 1) the degree of culpability of the party who lost or destroyed the evidence, and (2) the degree of actual prejudice to the other party. See, e.g., Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 79 (3d Cir. 1994); Dillon, 986 F.2d at 267-68; Vazquez-Corales v. Sea-Land Serv., Inc., 172 F.R.D. 10, 13-14 (D. P.R. 1997) (collecting cases). The bulk of Miller's arguments on appeal concern the first factor: his culpability, or lack thereof.

Miller's argument that the district court erred in not distinguishing between him and American Eagle is, at best, disingenuous. Miller and American Eagle filed a joint response to MACS' motion to dismiss, in which Miller made no argument that he should be treated differently than American Eagle. Likewise, at the hearing before the district court, Miller's counsel declined the court's invitation to speak to the motion to dismiss, saying he would defer to counsel for American Eagle, who drafted the written response. See Appellants' App. at 252. Thus, Miller and American Eagle presented a united front to the district court, and Miller made no suggestion that either his duty or his culpability was any less than that of American Eagle. The first time that Miller even suggested to the district court that it should distinguish between him and American Eagle in imposing a sanction was in his motion to reconsider, filed after the district court entered the order at issue on appeal. The district court did not abuse its discretion in declining to reconsider its order based upon this new argument.

A litigant has a duty to preserve evidence that he knows or should know is relevant to imminent or ongoing litigation. See Dillon, 986 F.2d at 267; Vazquez-Corales, 172 F.R.D. at 11. At the district court hearing, counsel for American Eagle, whom Miller had authorized to speak on his behalf, conceded that plaintiffs had a duty to preserve the landing gear, see Appellant's App. at 262, and that MACS had a right to examine it, see id. at 255. The undisputed evidence also established that Miller had authorized SCAR to take possession of his airplane and make necessary repairs. Under the circumstances, Miller cannot now be heard to argue that he had no duty to preserve the landing gear once it was in SCAR's possession.

Other courts have sanctioned a party for failing to preserve evidence even when the evidence was not in the party's actual possession at the time the spoliation occurred. Thus, in Sylla-Sawdon v. Uniroyal Goodrich Tire Co., 47 F.3d 277, 281 (8th Cir. 1995), the court rejected the plaintiff's argument that she should not be sanctioned for failing to preserve evidence because she did not have ownership or custody of the evidence. The plaintiff was injured when the rear tire on the car in which she was a passenger blew out and the driver lost control of the car. Id. at 279. After the accident, title to the car passed from the plaintiff's mother to the mother's insurance carrier, which then sold it for salvage. Before suit was filed, plaintiff's attorneys inspected the car at the salvage yard

-12-

and purchased the seat belt mechanism, but did not purchase the three remaining tires. Id. at 280. When plaintiff subsequently sued the tire manufacturer, alleging that a tire defect caused the accident, a question arose as to the age of the tire that blew out, which could be answered definitively only by an inspection of the remaining three tires. Id. Because the plaintiff had failed to preserve the other tires, the district court imposed an evidentiary sanction against her. Id. The appellate court upheld the sanction, concluding that the plaintiff's attorneys knew or should have known that all of the tires would be relevant to a future suit and should be preserved, and that they should have acquired the tires from the salvage yard when they had the opportunity to do so. Id. at 281.

In Dillon, 986 F.2d at 265, the plaintiff, who was injured when the car in which he was a passenger collided with a trailer, sued the manufacturer, alleging his injuries arose from a defective seat belt retractor. Before the suit was filed, the plaintiff's attorney arranged for the car to be examined by an expert. The expert removed the seat belt retractor mechanism and the pillar to which it was attached, but did not preserve the rest of the car. Id. Instead, when the police asked him to remove the vehicle from his parking lot, he had it towed to a salvage yard. The plaintiff's attorney was notified of the move approximately two weeks before the car was destroyed. Id. The district court concluded that sanctions against the plaintiff were warranted because both the plaintiff's attorney and his

-13-

expert knew or should have known that the entire car would be relevant to ensuing litigation and, therefore, they should have preserved the car in its entirety. Id. at 267. The appellate court concluded that the plaintiff's failure to preserve the evidence, coupled with the resulting prejudice to the defendant, justified the district court's imposition of sanctions. Id. at 267-69. See also Moyers ex rel. Moyers v. Ford Motor Co., 941 F. Supp. 883, 884 (E. D. Mo. 1996) (concluding that sanctions were warranted where, shortly after accident, car was purchased from plaintiff's insurer and taken to salvage yard, whose employees removed seat belts at request of plaintiff's counsel and set them aside, but later discarded them); Barker v. Bledsoe, 85 F.R.D. 545, 547-48 (W.D. Okla. 1979) (concluding that sanctions were warranted where plaintiff's expert witness destroyed evidence in the course of his examination, thereby prejudicing defendant's ability to obtain a fair trial).

Miller knew that the damaged landing gear was relevant to his claims against MACS, and he, therefore, had a duty to preserve the evidence. His argument that only American Eagle had a duty to preserve the landing gear is misguided. American Eagle did not enter the suit as a party until almost a year after Miller filed his complaint. Moreover, that American Eagle may also have had a duty to preserve the evidence did not absolve Miller of his duty to preserve evidence that was relevant to his own claims against MACS. Under the

-14-

circumstances, Miller's failure to preserve the landing gear provided a basis for the imposition of sanctions.

"Before a sanction for destruction of the evidence is appropriate, however, there must also be a finding that the destruction prejudiced the opposing party." Dillon, 986 F.2d at 267. The district court here found that the destruction of the landing gear severely prejudiced MACS. As the court noted, before the landing gear was lost or destroyed, Miller and his agents had an opportunity to inspect its components, both on and off the aircraft, and to develop a theory of liability. MACS, however, had no such opportunity.

The two experts retained by MACS gave detailed explanations in their affidavits as to why a visual inspection of all the components of the landing gear, as well as testing, was critical to the defense. Based on the evidence before it, the district court concluded that "hands-on inspection and testing is critical to a fair trial and due process for the Defendants." Appellants' App. at 189. As the court noted, "[t]he sworn opinion of an expert is not entitled to probative credit if the hypothesis upon which it is based is flawed." Id. Thus, without visual inspection and testing, the testimony of MACS' experts would be speculative at best. The district court considered and rejected plaintiffs' argument that the parties were on a level playing field because plaintiffs were as prejudiced by the loss of the landing gear as was MACS. See id. at 260. Given that plaintiffs' agents had the

-15-

opportunity to visually inspect the landing gear components and, presumably, would testify that their observations supported a finding of liability on the part of MACS, we cannot say that the district court erred in rejecting plaintiffs' "level playing field" argument. Based upon our review of the record, we conclude that the district court did not abuse its discretion in determining that the prejudice to MACS warranted the imposition of sanctions against Miller.

Having rejected Miller's arguments that neither his conduct nor the resulting prejudice to MACS justified the imposition of a sanction against him, we briefly consider the nature of the sanction imposed. As the district court acknowledged, a court should impose the least onerous sanction that will remedy the prejudice and, where applicable, punish the past wrongdoing and deter future wrongdoing. See id. at 190; see, e.g., Schmid, 13 F.3d at 78. "[D]ismissal is usually appropriate only where a lesser sanction would not serve the interest of justice." Meade v. Grubbs, 841 F.2d 1512, 1520 (10th Cir. 1988) (quotation omitted). Nonetheless, dismissal as a sanction is clearly within a district court's discretion. See Chambers, 501 U.S. at 44 ("[O]utright dismissal of a lawsuit . . . is a particularly severe sanction, yet is within the court's discretion."); Dillon, 986 F.2d at 268 ("[W]hether the extent of a sanction is appropriate is a question peculiarly committed to the district court.").

In the district court, Miller and American Eagle argued only that neither their conduct nor the prejudice to MACS justified the imposition of <u>any</u> sanction; they did not discuss what lesser sanction, short of dismissal, would cure the prejudice to MACS if the court determined that some sanction was warranted. Nonetheless, the court's order reflects that it considered sanctions other than dismissal. <u>See</u> Appellants' App. at 190 ("Sanctions could include dismissal, claim preclusion, or the giving of an adverse inference instruction. The Court may also impose no sanction.").

The district court rejected the sanction of an adverse inference instruction, concluding that it would not restore MACS' right to a fair trial, and "would result only in probative ambiguity in such a case as this." <u>Id.</u> at 191. In light of our recent opinion in <u>Aramburu</u>, 112 F.3d at 1407, it also appears that an adverse inference instruction would not have been appropriate here, because there was no evidence of bad faith on the part of either American Eagle or Miller. In his reply brief, Miller suggests that the district court could have excluded expert testimony as a lesser sanction. Given the district court's findings, however, such a sanction would not have cured the prejudice to MACS. Perhaps a sanction that excluded all evidence arising from the visual inspection of the landing gear would have leveled the playing field, but, and at that point, Miller would have been unable to prove liability on the part of MACS. <u>See, e.g.</u>, <u>Unigard Sec. Ins. Co.</u>, 982 F.2d at

365-66 (excluding testimony from two of plaintiff's witnesses and evidence from heater and burned vessel, which witnesses' had inspected, and then granting summary judgment because plaintiff could not establish liability without the excluded evidence).

Under the circumstances, we conclude that the district court did not abuse its discretion in dismissing Miller's claims for damages arising out of the landing gear as a sanction for the loss or destruction of the landing gear. See Allstate, 53 F.3d at 804, 806-07 (upholding dismissal of case as sanction where insurance adjustor and expert witness threw away evidence they believed was unimportant, resulting in prejudice to defendant); Moyers ex rel. Moyers, 941 F. Supp. at 884-86 (granting summary judgment to defendant based on substantial prejudice that resulted from plaintiff's counsel's failure to preserve evidence when he had the opportunity to do so).

AFFIRMED.

Entered for the Court

James E. Barrett
Senior Circuit Judge

-18-